UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| TAMARA A. HAYNES | CIVIL ACTION NO. 25-0801 |
| | SECTION P |
| VS. | |
| | JUDGE JERRY EDWARDS, JR. |
| TANNER ZORDAN, ET AL. | MAG. JUDGE KAYLA D. MCCLUSKY |

### REPORT AND RECOMMENDATION

Plaintiff Tamara A. Haynes,[1] who proceeds pro se and in forma pauperis, filed this proceeding on approximately June 6, 2025, under 42 U.S.C. § 1983. She names the following Defendants: State Trooper Tanner Zordan, State Trooper Jacob Robinson, and the Louisiana State Police Department.[2] For reasons that follow, the Court should stay Plaintiff's claims of false arrest, unlawful detention, unlawful search, and excessive force. The Court should dismiss Plaintiff's remaining claims.

### Background

On January 18, 2025, State Trooper Tanner Zordan stopped Plaintiff's vehicle on Highway 139 in Monroe, Louisiana; he did not provide a reason for the stop. [doc. # 1-3, p. 3]. Plaintiff writes that a "backup" officer arrived, instructed her to exit the vehicle, and, when Plaintiff asked why she needed to exit, the officer cited *Pennsylvania v. Mimms*. [doc. # 5, p. 1]. Plaintiff exited the vehicle; she claims that Zordan then arrested her without probable cause in

---

[1] Plaintiff also refers to herself as Tamara Andrianne Hardmon. [doc. # 1-2, p. 1].

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

violation of her Fourth Amendment rights.  [doc. #s 1, p. 7; 1-2, p. 2; 5, p. 2].  Zordan charged Plaintiff with resisting an officer and unlawful window tint.  [doc. # 1-3, p. 3].  Plaintiff maintains that she is innocent of the charges.  [doc. #s 1, p. 7; 1-2, p. 2].  She adds that after her arrest, a judge issued an arrest warrant.  [doc. # 5, p. 3].  Her charges are pending.  *Id.*

Plaintiff also claims that Zordan unlawfully searched her purse, her person, and her automobile without a warrant.  [doc. #s 1, p. 7; 5, p. 2].

Plaintiff claims that when Zordan pursued her before stopping her vehicle, his actions constituted "stalking and harassment . . . under the Protection from Harassment Act of 1997."  [doc. # 1-2, pp. 1].

Plaintiff claims that Zordan used excessive force during the arrest, body slamming her into his vehicle and injuring her shoulder.  [doc. # 5, p. 2].  When he used force, she was handcuffed and allegedly did not pose a threat or resist.  [doc. #s 1, p. 7; 5, p. 2].  She "had her phone in her hand recording the Defendant's action."  [doc. # 5, p. 2].

Plaintiff claims that a towing company stole her vehicle by towing it following her arrest.  [doc. #s 1, p. 4; 1-2, p. 2; 1-3, p. 3].  She also claims that Zordan towed and impounded her vehicle "without warrant or court order[.]"  [doc. # 5, p. 2].

Plaintiff claims that after Zordan arrested her, he did not bring her "before a proper Judge or Court as is required by due process."  [doc. # 5, p. 4].

Plaintiff claims: "Due to the unlawful actions of the Defendant, the Plaintiff suffered a series of assaults and batteries upon her person, including arrest, handcuffing, imprisonment, physically searched, forced fingerprinting and booking procedures, harassment, and stalking."  [doc. # 5, pp. 4-5].

On May 5, 2025,³ State Trooper Jacob Robinson stopped Plaintiff's vehicle on Highway 139. [doc. #s 1-3, p. 4; 5, p. 5]. When Robinson asked Plaintiff for her driver's license, Plaintiff gave him her passport and stated that she was "not required to be a licensee." [doc. # 5, p. 5]. She alleges that Robinson searched her person after another unnamed deputy arrived and told Robinson that Plaintiff had a gun. [doc. # 5, p. 6]. "Another State trooper showed up and started searching the Plaintiff's automobile without a warrant[.]" *Id.* Robinson subsequently arrested her, allegedly without probable cause, and charged her with "improper lane use, vehicle license required, driver must be licensed, expired inspection sticker, criminal sanctions for operating a motor vehicle not covered by insurance, [and] resisting an officer." [doc. #s 1, p. 7; 1-2, p. 3; 1-3, p. 4; 5, p. 5]. Plaintiff maintains that she is innocent of the charges. [doc. #s 1, p. 7; 1-2, p. 3].

Plaintiff suggests that Robinson used excessive force during the arrest by striking her. [doc. # 1, p. 7]. She maintains that she "did not pose a threat and did not resist[.]" *Id.*

Plaintiff states that after both arrests, she endured pain, suffering, emotional distress, medical expenses, and lost wages. [doc. # 1, p. 5].

Plaintiff alleges that when she arrived at the jail, she was assigned to a padded cell, which had a hole in the floor "to use the bathroom." [doc. # 5, p. 7]. A deputy at the jail told her, "I'm going to put you somewhere they will never find you." *Id.* When Plaintiff's family attempted to call her, the deputy told her family that she was not at the jail. *Id.* Another "night deputy" retaliated against Plaintiff because she refused to talk. *Id.*

Plaintiff claims that after Robinson arrested her, he did not bring her "before a proper Judge or Court as is required by due process." [doc. # 5, p. 9].

---

³ In her initial pleading, Plaintiff stated that the relevant date was May 6, 2025. [doc. # 1-3, p. 4].

Plaintiff states that on June 30, 2025, a judge issued a warrant for her arrest. [doc. # 5, p. 8].

For relief, Plaintiff seeks compensation, punitive damages, and the dismissal of her charges. [doc. #s 1, p. 5; 1-2, p. 9; 5, p. 5].

## Law and Analysis

**1. Preliminary Screening**

Because Plaintiff is proceeding in forma pauperis, her Complaint is subject to screening under § 1915(e)(2). Section 1915(e)(2)(B) provides for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a

4

reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. A complaint fails to state a claim where its factual allegations do not "raise a right to relief above the speculative level." *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). "[U]nadorned, the-defendant unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 677.

"[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was

committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. *Heck v. Humphrey* and *Wallace v. Kato***

As above, Plaintiff claims that State Trooper Zordan unlawfully stopped her vehicle and detained her, unlawfully searched her person, purse, and vehicle, and arrested her without probable cause. Zordan charged Plaintiff with resisting an officer and unlawful window tint. [doc. # 1-3, p. 3]. Likewise, Plaintiff claims that Robinson unlawfully stopped her vehicle and detained her, unlawfully searched her person, arrested her without probable cause, and charged her with: "improper lane use, vehicle license required, driver must be licensed, expired inspection sticker, criminal sanctions for operating a motor vehicle not covered by insurance, [and] resisting an officer." [doc. #s 1, p. 7; 1-2, p. 3; 1-3, p. 4; 5, p. 5]. Plaintiff maintains that she is innocent of her charges, which are all pending. [doc. #s 1, p. 7; 1-2, pp. 2-3].

Plaintiff also claims that Zordan used excessive force during the arrest, body slamming her into his vehicle and injuring her shoulder. [doc. # 5, p. 2]. When he used force, she was handcuffed and allegedly did not pose a threat or resist. [doc. #s 1, p. 7; 5, p. 2]. She "had her phone in her hand recording the Defendant's action." [doc. # 5, p. 2]. Plaintiff similarly suggests that Robinson used excessive force during the arrest by striking her. [doc. # 1, p. 7]. She maintains that she "did not pose a threat and did not resist[.]" *Id.*

If Plaintiff is convicted of her pending charges, she may not be entitled to seek relief for the claims above until any convictions are reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus. A successful civil rights action

that would necessarily imply the invalidity of the plaintiff's conviction or sentence must be dismissed unless the plaintiff first shows that the conviction or sentence has been reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus. *Heck v. Humphrey*, 512 U.S. 477 (1994).

While the rule in *Heck* does not extend to pending criminal matters, successful claims under Plaintiff's allegations could necessarily imply the invalidity of any future convictions.[4] *See Wallace v. Kato*, 549 U.S. 384, 393-94 (2007) (finding that the *Heck* rule applies only when there has been a conviction or sentence that has not been invalidated, not to pending criminal charges).

Prevailing on the unlawful stop/detention claim could necessarily imply the invalidity of a future conviction. Such claims are predicated on a lack of reasonable suspicion and necessarily constitute collateral attacks on a conviction if the conviction is founded on evidence derived from an officer's reasonable suspicion and subsequent stop. *See Jackson v. Vannoy*, 49 F.3d 175, 176 (5th Cir. 1995) (applying *Heck* to an unlawful vehicle stop clam); *Wallace v. Kato*, 549 U.S. 384, n.5 (2007) ("[A] Fourth Amendment claim can necessarily imply the invalidity of a conviction . . . .") *Agard v. Sanders*, 2006 WL 2128079, at *3 (N.D. Tex. July 31, 2006) (finding that the plaintiff's unlawful traffic stop claim would, if proved, implicate the validity of his guilty plea because the evidence discovered following the stop would be subject to suppression).

Likewise, Prevailing on the unlawful search claims *could* necessarily imply the invalidity of a future conviction because the claims are predicated on the absence of probable cause for the

---

[4] A successful claim will not necessarily imply the invalidity of a conviction "if the factual basis for the conviction is temporally and conceptually distinct from" the claim. *Bush v. Strain*, 513 F.3d 492, 498 (5th Cir. 2008).

searches and, therefore, would constitute a collateral attack on any future conviction founded on any evidence derived from the searches.[5] *See Hall v. Lorenz*, 48 F. App'x 481 (5th Cir. 2002) ("Hall's claims regarding his allegedly illegal arrest and illegal search and seizure, if successful, would undermine the validity of his felony drug conviction.").[6]

Prevailing on the false arrest claims—and establishing that the officers lacked probable cause to charge Plaintiff—could also necessarily imply the invalidity of a conviction because the claims are essentially a collateral attack on a criminal judgment's validity. *Thomas v. Pohlmann*, 681 F. App'x 401, 406 (5th Cir. 2017) (citing *Cormier v. Lafayette City-Par. Consol. Gov't*, 493 Fed. App'x. 578, 583 (5th Cir. 2012)); *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995) ("[The plaintiff's] proof to establish his false arrest claim, i.e., that there was no probable cause to arrest

---

[5] While "a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial . . . [b]ecause of doctrines like independent source[,] inevitable discovery, and [] harmless error," Plaintiff's allegations do not suggest that any of these doctrines would, following a finding by this Court that the officer lacked probable cause to search, validate Plaintiff's potential conviction. *See Heck*, 512 U.S. at n.7 (alterations to original and cited sources omitted); *see also Hudson v. Hughes*, 98 F.3d 868, 872 (5th Cir. 1996) ("If proved, however, [the plaintiff's] false arrest claim necessarily would call into question his conviction as a felon in possession of a firearm. Specifically, if the arresting officers lacked probable cause to arrest Hudson for burglary and the arrest is invalid, the firearm discovered in Hudson's possession as a result of the arrest would be subject to suppression under the Fourth Amendment as the 'fruit' of an illegal arrest. Moreover, it is improbable that doctrines such as independent source, inevitable discovery and harmless error would permit the introduction of the firearm as evidence in this case . . . .").

[6] *See also Handshaw v. Hilliard*, 2015 WL 5177623, at *4 (S.D. Miss. Sept. 4, 2015) (finding a false arrest claim "*Heck* barred" and reasoning that "if Defendants' stop of Plaintiff, the occurrences surrounding his being taken into custody, and the subsequent search incidental to arrest [which revealed the drugs that were essential to the criminal charge] were determined unconstitutional . . . , such a holding would cast into doubt or potentially invalidate Plaintiff's drug possession charge."); *Lister v. Perdue*, 2015 WL 864834, at *1 (N.D. Tex. Feb. 27, 2015); *Scallion v. Red River Par.*, 2006 WL 2524159, at *2 (W.D. La. Aug. 25, 2006).

[for the crime he was convicted of], would demonstrate the invalidity of [the conviction].").[7]

Prevailing on Plaintiff's excessive force claims could necessarily imply the invalidity of a future conviction. As above, Plaintiff was charged with resisting arrest following both alleged uses of force. Plaintiff, however, does not conceptually or temporally distinguish the factual bases of her criminal charges from the bases of her civil claims.[8] She does not, for instance, concede that she is guilty of resisting arrest yet claim (i) that the uses of force were excessive beyond what was necessary to secure her arrests or (ii) that the uses of force were excessive because they occurred only before or after she resisted. Plaintiff states that she did nothing wrong and is not guilty of resisting arrest, maintaining that she was already handcuffed and did not pose a threat.

If Plaintiff prevails on her excessive force claims—by establishing *inter alia* that any force used was excessive because she was handcuffed and did not pose a threat, the ruling here *could* necessarily imply that she did not commit the charged crimes of resisting arrest. *See Arnold v. Town of Slaughter*, 100 F. App'x 321, 325 (5th Cir. 2004) (finding, where a plaintiff alleged that he did nothing wrong and was viciously attacked for no reason, that the claim was barred because it squarely challenged the factual determination that underlay his conviction for resisting an officer); *Ducksworth v. Rook*, 647 F. App'x 383, 386 (5th Cir. 2016) (finding, where

---

[7] *See also Queen v. Purser*, 109 Fed. App'x. 659 (5th Cir. 2004) (a former inmate's false-arrest claim necessarily challenged whether the evidence, which an officer seized following an allegedly illegal stop, and which led to his subsequent conviction, supplied probable cause for his arrest; thus, the claim was not cognizable absent a showing that the conviction had been invalidated); *Chande v. Moore*, 606 F. App'x 238, 239 (5th Cir. 2015) ("Because a showing that there was no probable cause for the challenged entry, search, seizure, and arrest would call into question the validity of [plaintiff's] resulting conviction for unlawful possession of a controlled substance with intent to deliver in a drug-free zone," the plaintiff's claims were barred by *Heck*); *Goldston v. City of Monroe ex rel. Monroe Police Dep't*, 621 F. App'x 274 (5th Cir. 2015).

[8] *See Bush, supra.*

9

the plaintiff was convicted of resisting arrest, disorderly conduct, and assault on a police officer, that the plaintiff's excessive-force claims were barred under *Heck* because "[h]is complaint present[ed] a single narrative of an unprovoked police attack; his 'broad claims of innocence relate[d] to the entire arrest encounter, and not merely a discrete part of it.'") (quoting *Daigre v. City of Waveland, Miss.*, 549 F. App'x 283, 287 (5th Cir. 2013)).

Successful excessive force claims could imply the invalidity of a future conviction for another reason. Under LA. REV. STAT. § 14:18(7), "The fact that an offender's conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct. This defense of justification can be claimed . . . [w]hen the offender's conduct is in defense of persons or of property under any of the circumstances described in Articles 19 through 22." Under Article 19, "The use of force or violence upon the person of another is justifiable . . . [w]hen committed for the purpose of preventing a forcible offense against the person . . . , provided that the force or violence used must be reasonable and apparently necessary to prevent such offense." LA. REV. STAT. § 14:19(A)(1)(a). Here, for instance, if Plaintiff proved that the officers used excessive force before she used any force or violence in response to the officers' force, she could essentially prove that her actions (if any) following the excessive force amounted to justifiable self-defense, thus undermining a potential conviction.[9]

---

[9] In *Hudson v. Hughes*, 98 F.3d 868, 872 (5th Cir. 1996), the Fifth Circuit held that a Louisiana conviction for battery of an officer—a crime for which justification is an affirmative defense—prevented the plaintiff from suing for excessive force in connection with the incident. The court reasoned that "if the plaintiff proved his excessive force claim, he would essentially be proving that his battery was justified, which would undermine his conviction." *Arnold v. Town of Slaughter*, 100 F. App'x 321, 323 (5th Cir. 2004) (discussing *Hudson*). Similarly, in *Arnold*, 100 F. App'x at 323, the court reasoned: "[C]ertain convictions will prevent a plaintiff from bringing an excessive force claim. For example, we have held that a Texas conviction for aggravated assault on a police officer bars claims for excessive force related to the same conduct. . . . Texas

10

Federal courts should stay civil rights claims that attack the legality of a detainee's arrest, prosecution, and detention until the allegedly improper state prosecution concludes. *See Kato*, 549 U.S. at 393-94. Critically, "If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim *related to* rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court . . . to stay the civil action until the criminal case . . . is ended." *Id.* (emphasis added); *see Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995) (opining that courts *should* stay proceedings "until the pending criminal case has run its course . . . .").

Here, Plaintiff's claims above are *related to* rulings that will likely be made concerning her pending charges. Accordingly, the Court should stay these claims pending the outcome of Plaintiff's ongoing criminal prosecution.[10]

### 3. Protection from Harassment Act of 1997

Plaintiff claims that when Zordan pursued her before stopping her vehicle, his actions constituted "stalking and harassment . . . under the Protection from Harassment Act of 1997." [doc. # 1-2, pp. 1].

---

law permits an officer to use any force-even deadly force-to protect against an aggravated assault. *Sappington,* 195 F.3d at 237. Because any force was justified in response to an assault, a finding that the officers used excessive force would necessarily mean that the plaintiff had not committed aggravated assault." *See State v. Ceaser*, 2002-3021 (La. 10/21/03), 859 So. 2d 639 ("An individual in Louisiana has a time-honored right to resist an illegal arrest.").

[10] *See Mackey*, 47 F.3d at 746 ("At this point it is simply premature to determine whether or not Mackey's damage claims are barred under *Heck*. . . . The court [should] stay proceedings in the section 1983 case until the pending criminal case has run its course, as until that time it may be difficult to determine the relation, if any, between the two."); *Davis v. Zain*, 79 F.3d 18, 19 (5th Cir. 1996) ("[I]f some presently unforeseen or unarticulated conflict arises between the criminal retrial and the pending § 1983 case, the district court may consider the propriety of a stay . . . .").

By all accounts, however, the "Protection from Harassment Act of 1997" is an Act of Parliament of the United Kingdom[11] and, therefore, has no force or effect in the sovereign United States of America. *See* DECL. OF INDEPENDENCE, July 4, 1776. The Court should dismiss this claim.

**4. Towing Plaintiff's Vehicle**

Plaintiff claims that a towing company stole her vehicle by towing it following her arrest. [doc. #s 1, p. 4; 1-2, p. 2; 1-3, p. 3]. She also claims that Zordan towed and impounded her vehicle "without warrant or court order[.]" [doc. # 5, p. 2].

As to the towing company, Plaintiff does not identify it, name it as a defendant, or otherwise seek relief from it. Accordingly, the Court should dismiss this ostensible claim.

As to Defendant Zordan, Plaintiff does not state a plausible claim. "The community caretaking exception to the Fourth Amendment's warrant requirement allows the police to impound a vehicle for noninvestigatory purposes when it is reasonable to do so (say, to remove an impediment to traffic or to protect a vehicle from theft or vandalism)." *United States v. Sanchez*, 612 F.3d 1, n.2 (1st Cir. 2010). "Public caretaking typically applies when the owner of the vehicle has been arrested while the vehicle is on the public streets. In that situation, the public caretaking exception to the warrant requirement allows police to impound the vehicle to protect the vehicle, its contents, and the surrounding roadways." *Trent v. Wade*, 776 F.3d 368, 387 (5th Cir. 2015). "The reason that officers can impound a vehicle under the community caretaker exception after the driver has been arrested is irrelevant to the reason for which the driver was arrested (*i.e.*, the probable cause). *Degenhardt v. Bintliff*, 117 F.4th 747, 756-57 (5th Cir. 2024) (cited source omitted). "When a driver is arrested, the police need to get the vehicle

---

[11] Protection from Harassment Act, 1997, c. 40 (Gr. Brit.).

off the road so that it does not impede traffic or jeopardize public safety and to protect the vehicle itself." *Id.* (citing *United States v. McKinnon*, 681 F.3d 203, 206 (5th Cir. 2012) (holding that the community caretaking exception applied where a vehicle could have become a nuisance, damaged, or stolen; the driver had no proof of insurance; and the vehicle's registration sticker was expired)). "The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." *S. Dakota v. Opperman*, 428 U.S. 364, 369 (1976).

Here, Zordan arrested Plaintiff. Thus, under the public caretaking exception to the warrant requirement, he was lawfully permitted to, without a warrant, impound Plaintiff's vehicle to protect it, its contents, and the surrounding roadways.[12] The Court should dismiss this claim.[13]

**5. Failure to Bring Plaintiff Before a Judge**

Plaintiff claims that after arresting her, Zordan did not bring her "before a proper Judge or Court as is required by due process." [doc. # 5, p. 4]. She raises the same claim against Robinson. *Id.* at 9.

---

[12] Plaintiff does not allege that Zordan impounded or towed her vehicle for reasons other than protecting her vehicle, its contents, or the surrounding roadways. Nor does she claim that any defendant unlawfully searched her impounded vehicle. Rather, and to reiterate, she only claims that Zordan lacked a warrant to impound the vehicle.

[13] *See Allen v. City of Dallas*, 2023 WL 8285097, at *4 (N.D. Tex. Nov. 14, 2023), *report and recommendation adopted,* 2023 WL 8285199 (N.D. Tex. Nov. 29, 2023) ("Plaintiff's allegations are too vague and sparse to state claim. To the extent that officers stopped him while he was driving and then arrested him, the impoundment was permissible so long as it was carried out in furtherance of a community caretaking function; there are no facts to suggest otherwise."); *Silver v. City of San Antonio*, 2019 WL 13273235, at *4 (W.D. Tex. June 6, 2019) ("And once a driver is legitimately arrested, his vehicle may be impounded.").

"[A] warrantless arrest supported by probable cause is constitutionally permissible. To continue to detain the suspect, the state must obtain a fair and reliable determination of probable cause by a neutral magistrate promptly after arrest." *Jones v. Lowndes Cnty., Miss.*, 678 F.3d 344, 348 (5th Cir. 2012) (internal footnotes and quoted sources omitted). "The Court elaborated on this in *County of Riverside v. McLaughlin:* 'a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*.'" *Id.* (quoting *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991)). "If the determination of probable cause is delayed by more than 48 hours the burden shifts to the government, and its showing of reasonableness will, virtually by definition, demand a bona fide emergency or other extraordinary circumstance, which does not include intervening weekends or efforts to consolidate [additional] pre-trial proceedings." *Id.* (quotation marks and quoted sources omitted). "*McLaughlin* provides the 48-hour timeline as a useful benchmark, but does not hold that determinations of probable cause made after the lapse of 48 hours are always unreasonable." *Id.*

Here, Plaintiff only alleges that when Zordan and Robinson brought her to the jail, they (i) "made no attempt to bring [her] before a proper Judge or Court as is required by due process" and (ii) failed "to take her to a Judge or Court to decide" "how to deal with" her. [doc. # 5, p. 4]. She does not claim that she lacked a probable cause hearing within forty-eight hours of her arrest; rather she alleges that Zordan and Robinson did not bring her before a judge or court when they brought her to the jail. "[T]he Fourth Amendment does not compel an immediate determination of probable cause upon completing the administrative steps incident to arrest." *See Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 53-54 (1991). Accordingly, the Court should dismiss these claims.

**6. Formulaic Claims**

Plaintiff claims: "Due to the unlawful actions of the Defendant, the Plaintiff suffered a series of assaults and batteries upon her person, including arrest, handcuffing, imprisonment, physically searched, forced fingerprinting and booking procedures, harassment, and stalking." [doc. # 5, pp. 4-5].

At bottom, Plaintiff presents only labels, conclusions, and formulaic verbiage. She alleges "assaults and batteries," but absent more her examples—arrest, imprisonment, fingerprinting, booking procedures, harassment, and stalking)—are not remotely related to an assault or battery under Louisiana law.[14] With respect to her suggestion that her handcuffing constituted an assault or battery, she does not specify which arrest (or both) to which she refers, and she does not provide enough information to state a plausible claim. So too, as to her suggestion that she was assaulted or battered during a search, she does not specify which search (i.e., a search from the first arrest, a search from the second arrest, or a search at the jail) to which she refers, and she does not explain how any search constituted an assault or battery. Even construing these allegations liberally and in her favor, Plaintiff only presents threadbare recitations of causes of action which do not satisfy Federal Rule of Civil Procedure 8. The Court should dismiss these claims.

**7. Conditions of Confinement**

Plaintiff alleges that when she arrived at the jail, she was assigned to a padded cell, which had a hole in the floor "to use the bathroom." [doc. # 5, p. 7]. A deputy at the jail told her, "I'm

---

[14] "Assault is an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery." LA. REV. STAT. § 14:36. "Battery is the intentional use of force or violence upon the person of another; or the intentional administration of a poison or other noxious liquid or substance to another." La. Rev. Stat. § 14:33.

15

going to put you somewhere they will never find you." *Id.* When Plaintiff's family attempted to call her, the deputy told her family that she was not at the jail. *Id.* She claims that she "had to sleep on the cold hard floor with no food, water, [or] shoes," and she lacked "phone calls for two days[.]" *Id.* Another "night deputy" retaliated against Plaintiff because she refused to talk. *Id.*

It is unclear whether Plaintiff is raising claims or if she is simply providing background/narrative concerning what happened after her arrest. To the extent she is attempting to raise claims for relief, she does not name the jail deputies as defendants or otherwise seek relief from them. In this respect, the Court should dismiss the ostensible claims.

Insofar as Plaintiff faults Defendant Robinson for her conditions of confinement after Robinson arrested her and transported her to the jail, she does not state a plausible claim. Specifically, she does not plead plausible causation. Her ostensible claim, as the undersigned understands it, is essentially that if Robinson never arrested her and if she was never incarcerated, she would not have experienced the conditions of confinement at the jail. Plaintiff, however, does not allege that Robinson was personally involved in or causally connected to the conditions of confinement at the detention facility. While Plaintiff would not have been incarcerated but for her arrest, Robinson's involvement is too attenuated to establish plausible causation. The Court should dismiss this claim.

**8. Louisiana State Police Department**

Plaintiff names "Louisiana State Police Department" as a defendant. [doc. # 5, p. 1].

Liability under 42 U.S.C. § 1983 only applies to "person[s]" who deprive others of rights secured by the Constitution. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

The Division of State Police is a division under the Department of Public Safety and

Corrections. *See* LA. REV. STAT. §§ 40:1301, 40:1371 ("[T]he department of state police has been reduced to [a] division in the department of public safety.");[15] *see also Allemang v. Louisiana Through Dep't of Pub. Safety (Louisiana Off. of State Police, Troop D)*, 2022 WL 3226620, at *4 (5th Cir. Aug. 10, 2022) ("The Louisiana State Police Department is a sub-unit of the Louisiana Department of Public Safety, an independent executive agency of the state government . . . .").

The Department of Public Safety and Corrections is not a "person" under Section 1983. *Will*, 491 U.S. at 71 (finding that the Michigan Department of State Police is not a "person" under Section 1983); *Washington v. Louisiana*, 425 F. App'x 330, 333 (5th Cir. 2011) ("The State and [Department of Public Safety and Corrections] are not persons . . . ."). Accordingly, the Court should dismiss Plaintiff's claims against this defendant.

## Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Tamara A. Haynes's false arrest, unlawful detention, unlawful search, and excessive force claims be **STAYED** under the following conditions:

> a. If Plaintiff intends to proceed with these claims, she must, within thirty (30) days of the date the criminal proceedings against her conclude, file a motion to lift the stay;
>
> b. If the stay is lifted and the Court finds that Plaintiff's claims would impugn the validity of her conviction, the action will be dismissed under *Heck*; if no such finding is made, the action will proceed absent some other bar to suit;
>
> c. Plaintiff should not file any more documents concerning these particular claims (other than an objection to this Report and Recommendation if she chooses) in this action until the state court proceedings conclude; and

---

[15] "Act No. 97 of the 1983 Regular Session of the Louisiana Legislature . . . merged the Department of Corrections with the Department of Public Safety . . . ." LA. REV. STAT. § 36:401.

d. Defendants shall not be required to answer these claims during the stay, and Plaintiff may not seek a default judgment or conduct any discovery during the stay.

**IT IS FURTHER RECOMMENDED** that Plaintiff's remaining claims be **DISMISSED WITH PREJUDICE** as legally frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, this 5th day of August, 2025.

_____
Kayla Dye McClusky
United States Magistrate Judge